## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| JESSE SANTOS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-190 |
| | ) | |
| CAR FINANCIAL SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S COMPLAINT

Plaintiff, JESSE SANTOS ("Plaintiff"), through his attorney, Agruss Law Firm, LLC, alleges the following against Defendant, CAR FINANCIAL SERVICES, INC. ("Defendant"):

## INTRODUCTION

1. Count I of Plaintiff's Complaint is based on the Telephone Consumer Protection Act., 47 U.S.C. § 227, et seq. ("TCPA").

2. Count II of Plaintiff's Complaint is based on the Texas Debt Collection Act Tex. Fin. Code Ann. § 392, et al.  ("TDCA").

## JURISDICTION AND VENUE

3. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331 as Plaintiff's claims arise under the laws of the United States.

4. This Court has jurisdiction under 28 U.S.C. § 1367 which grants this court supplemental jurisdiction over the state claims contained within.

5. This Court has federal question jurisdiction because this case arises out of violations of federal law.  47 U.S.C. §227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

6. Defendant conducts business in San Antonio, Bexar County, Texas.

1

7. Venue and personal jurisdiction in this District are proper because Defendant does or transacts business within this District, and a material portion of the events at issue occurred in this District.

## PARTIES

8. Plaintiff is a natural person residing in San Antonio, Bexar County, Texas.

9. Plaintiff is a consumer as that term is defined by the TDCA.

10. Plaintiff is, and at all times mentioned herein, a "person" as defined by the TCPA.

11. Plaintiff allegedly owes a debt as that term is defined by the TDCA.

12. Defendant is a debt collector as that term is defined by the TDCA.

13. Defendant attempted to collect a consumer debt from Plaintiff.

14. Defendant is a business entity engaged in the collection of debt within the State of Texas.

15. Defendant is, and at all times mentioned herein, a "person" as defined by the TCPA.

16. Defendant is a consumer finance company with a principal place of business located in Atlanta, Fulton County, Georgia.

17. Defendant's business includes, but is not limited to, collecting on unpaid, outstanding account balances.

18. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

19. Defendant is attempting to collect an alleged consumer debt from Plaintiff which Plaintiff does not owe.

20. The alleged debt owed arises from transactions for personal, family, and household purposes.

2

21. On or around December 4, 2019, Defendant began calling Plaintiff on Plaintiff's cellular telephone at xxx-xxx-3254, in an attempt to collect the alleged debt.

22. Defendant calls Plaintiff from 866-242-6816, which is one of Defendant's telephone numbers.

23. All calls made to Plaintiff's telephone were an attempt to reach "Ruben Salezar."

24. On or around December 4, 2019, Plaintiff answered Defendant's call spoke with one of Defendant's representatives and requested for Defendant to stop calling him.

25. During the conversation, Plaintiff informed Defendant's representative that he was not "Ruben Salezar."

26. Despite Plaintiff's request for Defendant to stop calling him and knowing Plaintiff is not the debtor Defendant seeks to collect from, Defendant continued to place calls to Plaintiff's telephone unabated including, but not limited to, on or around December 6, 2019 at 11:47 a.m., December 16, 2019 at 2:00 p.m. and December 24, 2019 at 10:13 a.m.

27. Since Defendant began calling Plaintiff, Defendant's representatives have left the following voicemail messages on Plaintiff's telephone:

    a. "Ruben Salazar, give us a call back here. The number is 866-242-6816."

    b. "This message is Ruben Salazar. Return the phone call to 866-242-6816. The number again 866-242-6816."

    c. "Hi, this message is for Ruben Salazar. Ruben, please contact Car Financial Services. Phone number is 866-242-6816, 866-242-6816. Thank you."

28. On at least two occasions since Defendant began calling Plaintiff, Defendant left a voicemail message on Plaintiff's telephone with a blank recording.

29. At least four voicemail messages Defendant's representatives left on Plaintiff's telephone

did not disclose the communication was from CAR Financial Services.

30. Defendant's representatives intended to annoy, harass and/or threaten Plaintiff.

31. Defendant's representatives were working within the scope of their employment when they communicated with Plaintiff.

32. Defendant's representatives are or should be familiar with the TDCA.

33. Defendant's representatives know or should know the TDCA requires a debt collector to disclose the caller's name when communicating with a consumer.

34. Prior to calling Plaintiff's cellular telephone, Defendant knew the number was a cellular telephone number.

35. None of the calls Defendant made to Plaintiff were for an emergency purpose.

36. All of the calls were made by Defendant's employees or Defendant's agents. Thus, all of the calls were made on behalf of Defendant.

37. All of the calls Defendant made to Plaintiff's cellular telephone resulted in Plaintiff incurring a charge for incoming calls.

38. During at least one (1) conversation, Defendant learned that Plaintiff wanted Defendant to stop calling Plaintiff's cellular telephone.

39. Defendant never had consent to call Plaintiff's cellular telephone.

40. Even if at one point Defendant had prior express consent to call Plaintiff's cellular telephone, Plaintiff revoked this consent as described above.

41. Within four (4) years of Plaintiff filing this Complaint, Defendant used an ATDS to call Plaintiff's cellular telephone.

42. When Plaintiff answered Defendant's calls, he was sometimes greeted with "dead air" whereby no person was on the other end of the line. After several seconds, an employee

4

or agent was connected to the automated call then greeted Plaintiff and sought to speak with Plaintiff attempting to collect Plaintiff's alleged debt.

43. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to store telephone numbers.

44. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers automatically.

45. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers without human intervention.

46. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers in sequential order.

47. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers randomly.

48. The telephone dialer system Defendant used to call Plaintiff's cellular telephone selects telephone numbers to be called according to a protocol or strategy entered by Defendant.

49. The telephone dialer system Defendant used to call Plaintiff's cellular telephone dials numbers automatically from a list of numbers, with no human intervention involved at the time of dialing, and is an automatic telephone dialing system as defined by the Telephone Consumer Protection Act, 47 U.S.C. § 227(a)(1) and the Federal Communications Commission's (FCC's) 2003 Order regarding the TCPA. *See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14092 (2003); *Ammons v. Ally Financial, Inc.*, No. 3:17-cv-00505, 2018 WL 3134619 (M.D. Tenn. June 27, 2018).

50. The telephone dialer system Defendant used to call Plaintiff's cellular telephone

simultaneously calls multiple recipients.

51. Plaintiff will testify that he knew it was an autodialer because he heard a pause when he answered his phone before a voice came on the line.

52. The dead air that the Plaintiff may have experienced on the calls that he received is indicative of the use of an ATDS. This "dead air" is commonplace with autodialing and/or predictive dialing equipment. It indicates and evidences that the algorithm(s) being used by Defendant's autodialing equipment to predict when the live human agents are available for the next call has not been perfected and/or has not been recently refreshed or updated. Thus, resulting in the autodialer placing a call several seconds prior to the human agent's ability to end the current call he or she is on and be ready to accept the new connected call that the autodialer placed, without human intervention, to Plaintiff. The dead air is essentially the autodialer holding the calls it placed to Plaintiff until the next available human agent is ready to accept them. Should the calls at issue been manually dialed by a live human being, there would be no such dead air as the person dialing Plaintiff's cellular telephone would have been on the other end of the call the entire time and Plaintiff would have been immediately greeted by said person.

53. As a result of Defendant's alleged violations of law by placing these automated calls to Plaintiff's cellular telephone without prior express consent, Defendant caused Plaintiff harm and/or injury such that Article III standing is satisfied in at least the following, if not more, ways:

   a. Invading Plaintiff's privacy;
   b. Electronically intruding upon Plaintiff's seclusion;
   c. Intrusion into Plaintiff's use and enjoyment of his cellular telephone;
   d. Embarrassment, stress, worry, frustration, anger and trespass to chattel (phone);
   e. Impermissibly occupying minutes and data, draining of cell phone battery, negatively impacting Plaintiff's availability to answer another call, and various

other intangible rights that Plaintiff has as to complete ownership and use of his
cellular telephone; and

f.  Causing Plaintiff to expend needless time in receiving, answering, and attempting
to dispose of Defendant's unwanted calls.

## COUNT I
## DEFENDANT VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT

54. Plaintiff repeats and re-allege paragraphs 1-53 of Plaintiff's Complaint as the allegations
in Count I of Plaintiff's Complaint.

55. Defendant's conduct violated the TCPA by:

a.  Placing non-emergency telephone calls to Plaintiff's cellular telephone using an
automatic telephone dialing system and/or pre-recorded or artificial voice in
violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

WHEREFORE, Plaintiff, JESSE SANTOS, respectfully request judgment be entered
against Defendant, CAR FINANCIAL SERVICES, INC., for the following:

56. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff are
entitled to and request $500.00 in statutory damages, for each and every violation, pursuant
to 47 U.S.C. § 227(b)(3)(B);

57. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1),
Plaintiff are entitled to and request treble damages, as provided by statute, up to $1,500.00,
for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. §
227(b)(3)(C);

58. Plaintiff are entitled to and seek injunctive relief prohibiting such conduct in the future;
and

59. Any other relief that this Honorable Court deems appropriate.

## COUNT II
## DEFENDANT VIOLATED THE TEXAS DEBT COLLECTION ACT

60. Plaintiff repeats and re-allege paragraphs 1-53 of Plaintiff's Complaint as the allegations in Count II of Plaintiff's Complaint.

61. Defendant violated the TDCA based on the following:

    a.   Defendant violated Tex. Fin. Code § 392.302(2) by placing telephone calls without disclosing the name of the individual making the call and with the intent to annoy, harass, or threaten a person at the called number, when Defendant failed to disclose the name of the individual making the call during voicemail messages left on Plaintiff's telephone with the intent to annoy, harass or threaten Plaintiff; and

    b.   Defendant violated Tex. Fin. Code §392.302(4) by oppressing, harassing, or abusing Plaintiff by causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number, when Defendant continued to call Plaintiff after Plaintiff requested for Defendant to stop calling him – and continued to do so even after Defendant knew Plaintiff was not the debtor Defendant sought to collect from.

WHEREFORE, Plaintiff, JESSE SANTOS, respectfully request judgment be entered against Defendant, CAR FINANCIAL SERVICES, INC., for the following:

62. For statutory damages provided and pursuant to Tex. Fin. Code Ann. § 392.403 and/or Tex. Bus. & Com. Code § 17.50(d);

63. For attorneys' fees, costs and disbursements;

64. Injunctive relief pursuant to Tex. Fin. Code Ann. § 392.403(a)(1); and

65. For any such other and further relief, as well as further costs, expenses and disbursements of this action, as this Court may deem just and proper.

DATED:  February 20, 2020          RESPECTFULLY SUBMITTED,

By:  /s/ Michael S. Agruss
          Michael S. Agruss
          SBN: 6281600
          Agruss Law Firm, LLC
          4809 N. Ravenswood Ave., Suite 419
          Chicago, IL 60640
          Tel: 312-224-4695
          Fax: 312-253-4451
          michael@agrusslawfirm.com
          Attorney for Plaintiff